UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAMELA RAE MILLER,         )
                           )
        Plaintiff,         )   Case No. 1:12-cv-150
                           )
v.                         )   Honorable Robert J. Jonker
                           )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
                           )   **REPORT AND RECOMMENDATION**
        Defendant.         )
_____)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 24, 2008, plaintiff filed her applications for DIB and SSI benefits, alleging a July 11, 2008 onset of disability. (A.R. 125-35). Her claims were denied on initial review. (A.R. 64-71). On June 29, 2010, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 25-61). On August 5, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 10-20). On December 22, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ committed reversible error "by not properly considering the opinion of Plaintiff's treating physician or of the consulting physician and also used improper so-called boilerplate language to do so[;]"

2. The ALJ "did not have substantial evidence to support his finding that Plaintiff could perform a sufficient number of other jobs in the regional economy[;]" and

3. "The ALJ erred by failing to follow the vocational expert's answers to accurate hypothetical questions."

(Statement of Errors, Plf. Brief at 11, docket # 15). I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from July 11, 2008, through the date of the ALJ's decision. (A.R. 12). Plaintiff had not engaged in substantial gainful activity on or after July 11, 2008. (A.R. 12). Plaintiff had the following severe impairments: "fibromyalgia, early-stage lupus, obesity, mild-to-moderate sensorineural hearing loss, diabetes mellitus, and chronic headaches." (A.R. 12). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 13). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant, however, can only occasionally crawl, crouch, kneel, stoop, balance and climb ramps/stairs. She is precluded from climbing ladders, ropes and scaffolds and is limited to frequent use of the hands for handling and fingering. The claimant is precluded from working around hazards such as unprotected heights or moving machinery, and is to have no concentrated exposure to temperature extremes or wet or damp areas. She is limited to a work environment where there would be no more than a moderate level of background noise such as in a department or grocery store.

(A.R. 14). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 14-19). Plaintiff was unable to perform any past relevant work. (A.R. 19). Plaintiff was 54-years-old as of the date of her alleged onset of disability and 57-years-old as of the date of the ALJ's decision. Thus, plaintiff was initially classified as an individual closely approaching advanced age, and on and after June 6, 2009, she was classified as a person of advanced age. (A.R. 19). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 19). Plaintiff has acquired work skills from past relevant work. Her work as an owner/manager of a retail store (floral) was skilled and required the following skills: "supervisory skills, customer service skills, scheduling, and knowledge of hiring and firing practices." (A.R. 19). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 35,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 55-57). The ALJ found that this constituted a significant number of jobs. Using Rules 202.15 and 202.07 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 19-20).

**1.**

Plaintiff argues that the ALJ's factual finding regarding her credibility is not supported by substantial evidence. (Plf. Brief at 14-15). This case turns on the ALJ's factual finding regarding plaintiff's credibility, especially regarding the effect of fibromyalgia.[1] Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference,

---

[1] In *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs." *Id.* at 243. "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankoski v. Commissioner*, 532 F. App'x 614, 619 (6th Cir. 2013). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012) (same).

because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. Here, the ALJ gave a lengthy, and detailed explanation why he found that plaintiff's testimony was not credible:

> In filing the applications for Social Security benefits, the claimant alleged limitations in her ability to work due to lupus (Exhibit 1E, page 2). During the hearing, however, the claimant testified that she is experiencing ongoing body pain associated with fibromyalgia. Indicating that she also experiences fatigue, the claimant testified that her pain is worse in her arms, wrists, hands, hips and thighs. The claimant testified that as a result of symptoms, she spends at least 4 hours a day in a recliner, and is able to stand and walk for no longer than 10 to 15 minutes, lift only 10 to 15 pounds, and sit for only 20 to 25 minutes at a time. Additionally, the claimant testified to having hearing loss, as well as headaches which occur a couple of times a month. The claimant also testified that she is being treated for symptoms of depression.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Specifically, as discussed earlier, the record fails to establish the presence of depression which is "severe" as defined in the Regulations. The medical record fails to support the claimant's allegations that she is experiencing disabling symptoms associated with fibromyalgia. In reaching this conclusion, the undersigned is aware that the claimant has a

long-standing history of joint pain (Exhibit 13F, page 99). Treatment records reflect, however, that when seen on July 11, 2008, (the alleged onset date) the claimant complained of pain only in her left arm and wrist (Exhibit 2F, pages 2 and 10). Physical examination revealed swelling and increased warmth over the left forearm and wrist, as well as pain on palpation of the distal forearm. Pain was also noted in the tendon sheath of the thumb. The claimant, however, was able to flex and extend her wrist without difficulty. Her grip strength continued to be equal, bilaterally, and there were no neurovascular deficits (Exhibit 2F, pages 2 and 10). Although initially assessed as having cellulitis and de Quervain's tenosynovitis, the record reflects that after presenting for treatment with complaints of pain in her right hand, as well as itching and pain in her feet, the claimant underwent laboratory studies which revealed an elevated sedimentation (SED) rate, and positive ANA screen (Exhibit 2F, pages 7, 10 and 17). At that time, the claimant was diagnosed as having lupus, and prescribed medication (Exhibit 1F, page 5).

Contrary to the allegations of ongoing and disabling symptoms, the record documents that when examined on November 17, 2008, the claimant had no musculoskeletal or neurological abnormalities (Exhibit 11F, pages 1 and 3). Rheumatologist, Richard Martin, M.D., subsequently noted that when examined in January 2009, the claimant had 16 of 18 fibromyalgia trigger points which were tender to touch. The claimant, however, continued to have full active range of motion throughout her joints with no evidence of synovial thickening. Lumbar flexion was only mildly limited and straight leg raise tests were negative. Sensation and reflexes were normal in the lower extremities, and the claimant's motor strength was 5/5 throughout. Dr. Martin also noted that while the claimant evidence a non-scaling rash on her arms and shoulders there was no evidence of any papules or typical psoriatic plaquing. The doctor also noted that the July 2008 laboratory studies had revealed normal lupus anticoagulants (Exhibit 10F, page 4). Following the examination, Dr. Martin opined that the claimant had classic fibromyalgia with no evidence of weakness or inflammatory, psoriatic or rheumatoid arthritis (Exhibit 10F, page 5).

Progress notes reflect that despite treatment when seen in May 2009 the claimant continued to complain of migratory arthralgias of the wrists, knee, shoulder, hips, feet and ankles. On examination, however, the claimant had no evidence of edema or reflex loss. It is noted that the examiner reported no loss of motion, or deficits of sensation or motor strength (Exhibit 13F, page 20). Laboratory studies also revealed the claimant's SED rate to be within normal limits (Exhibit 14F, page 5). Moreover, the record documents that when seen in January 2010 the claimant reported that her fibromyalgia symptoms were controlled with medications. The claimant indicated, however, that she continued to be easily fatigued. She also reported having severe myalgia when performing activities for "prolonged" periods (Exhibit 19F, page 7). The physical examination also revealed no movement disorder. The claimant motor strength was 5/5, and she remained intact in respect to sensation and reflexes (Exhibit 19F, page 7).

Consultative examiner, Stacy Einerson, M.D., subsequently reported that when examined in February 2010, the claimant had multiple papules, plaques and macules on her upper and

lower extremities, and evidenced mild tenderness with range of motion of joints. The claimant's range of motion, however, was full throughout all joints. The claimant also had full dexterity of the hands. Her reflexes were symmetrical, and there were no deficits of sensation or motor strength. Dr. Einerson also noted that the claimant ambulated with a normal gait and did not require an assistive device (Exhibit 15F, page 3). It is noted that during an April 2010 examination, the claimant's treating physician also reported no loss of motion, or neurological deficits (Exhibit 19F, page 4).

Additionally, the record reflects that in spite of ongoing treatment, the claimant continues to have elevations in her glucose and hemoglobin A1c levels (Exhibit 13F, pages 45 and 52; and Exhibit 14F, pages 1, 3 and 7). Examinations performed by treating sources, however, have failed to reveal any visual or sensory abnormalities associated with the claimant's diabetes (Exhibit 10F, page 4; Exhibit 13F, pages 1 and 2; and Exhibit 19F, pages 4 and 7). Consultative examiner, Stacy Einerson, M.D., also noted that when examined in February 2010, the claimant's visual acuity was 20/30 on the right and 20/20 on the left, with glasses. There were no deficits of sensation, and the claimant ambulated with a normal gait (Exhibit 15F, page 3).

The record also reflects a diagnosis of tension type headaches (Exhibit 13F, page 11). The record, however, contains no statements regarding the frequency or duration of the claimant's symptoms. Moreover, during the hearing the claimant acknowledged that she was experiencing headaches a couple of times a month, and was taking only over-the-counter medication for her symptoms.

Likewise, the record contains little evidence of treatment in regard to the claimant's hearing loss. According to treatment records, the claimant underwent an audiological evaluation in October 2005 which revealed mild-to-moderate sensorineural hearing loss, bilaterally. At that time the claimant was determined to have unaided discrimination of 100%, bilaterally at 60 dB. The examiner also noted that the claimant had no significant conductive component to her hearing loss, and would benefit from the use of hearing aides (Exhibit 4F, pages 1 and 2). Although the record contains no evidence of any further evaluations, the claimant testified that she has utilized hearing aides for at least 5 years, and is able to hear "pretty good" unless there is a lot of background noise.

Physical examinations have also failed to reveal any respiratory, cardiovascular or musculoskeletal abnormalities associated with the claimant's obesity (Exhibit 1F, pages 4 and 5; Exhibit 15F, page 3; and 18F, page 1). Moreover, it is noted that during the hearing, as well as in filing the applications for Social Security benefits, the claimant reported no limitations associated with her body habitus.

The medical record, as discussed above, fails to support the claimant's allegations of ongoing and disabling symptoms.

    The claimant has also acknowledged activities of daily living which are not as limited as one would expect given her allegations of ongoing and disabling symptoms. Specifically, in filing the applications for Social Security benefits, the claimant completed a Function Report indicating that she cared for pets with assistance, prepared simple food, performed household chores, drove, and shopped (Exhibit 4E). During the hearing, the claimant also acknowledged that she was able to take care of her personal needs, as well as perform all household chores (with breaks).

    The undersigned is cognizant, however, that an individual's daily activities are only one factor taken into consideration for a finding on credibility. Other factors include the objective evidence and opinions, clinical and laboratory findings, the extent of medical treatment and relief from medication and therapy, the claimant's work history, attempts to seek relief from symptoms, and the extent, frequency, and duration of symptoms. Taking all of these factors into consideration, the undersigned concludes that the claimant has been less than forthcoming regarding her symptoms and functional limitations.

(A.R. 15-17).

This detailed analysis of the evidence hardly qualifies as "boilerplate." The ALJ's explanation of his factual finding regarding plaintiff's credibility is exemplary and supported by more than substantial evidence.

## 2.

Plaintiff's attack on the adequacy of the ALJ's hypothetical question to the VE is a reformulation of her unsuccessful challenge to the ALJ's credibility determination. The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *see also Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations found to be credible.

**3.**

Plaintiff argues that the ALJ committed reversible error "by not properly considering" the opinions of treating physician Shawn Ruth, D.O., and consulting physician Stacy Einerson,[2] M.D. (Plf. Brief at 12-14; Reply Brief at 2-3). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . .

---

[2] Plaintiff's initial brief and reply brief refer to Dr. Einerson as Dr. Emerson. These errors are harmless and they are mentioned herein only for the sake of clarity. The record contains no evidence from a "Dr. Emerson."

with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 461.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661

F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Rheumatology is the relevant specialty for evaluating fibromyalgia. *Rogers v. Commissioner*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Solomon v. Colvin*, No. 13-5121, 2014 WL 741548, at * 5 (C.D. Cal. Feb. 25, 2014). On January 16, 2009, Rheumatologist Richard Martin, M.D., examined plaintiff and offered a diagnosis of fibromyalgia. He found that 16 of the 18 fibromyalgia trigger points "[were] tender to touch." (A.R. 240). He reduced the prednisone that plaintiff had been taking since July 2008, with the intention of discontinuing the prescription altogether within a month. He adjusted medications to help with sleep and problems with itching. He started plaintiff on a "general stretching program." (A.R. 240-41).

On February 27, 2009, plaintiff reported to Dr. Martin that her sleep had improved and she had fewer skin problems since stopping prednisone. (A.R. 237). Plaintiff's questionnaire responses (A.R. 238-39) indicated that she had significant difficulty with vacuuming, yard work and "taking a tub bath." She was able to walk on flat ground and to climb five steps with no difficulty. She had no difficulty with her grip. She reported "some difficulty" completing other tasks. Dr. Martin recommended that plaintiff consider taking Lyrica or Cymbalta for her fibromyalgia. (A.R. 237). He recommended that plaintiff continue to take Ultracet as needed for pain and gradually increase her exercise level. Dr. Martin advised plaintiff to continue the home exercise program. (A.R. 237). Dr. Martin found that "[z]ero of 28 tender points were swollen." (A.R. 237). He found plaintiff did "have a positive ANA, but other serologic markers for lupus [were] normal. She had

a normal CBC, urinalysis and ha[d] no evidence of pleural, hematologic, renal, CNS, or articular manifestations of lupus." (A.R. 237). Nothing in Rheumatologist Martin's records suggested greater functional restrictions than those set forth in the ALJ's factual finding regarding plaintiff's RFC.

    A.    <u>Dr. Ruth</u>

Plaintiff argues that the ALJ failed to provide good reasons for the weight he gave to Dr. Ruth's opinions. (Plf. Brief at 13). Dr. Ruth is an internal medicine physician. (A.R. 243, 425). He began treating plaintiff in 2006. (A.R. 242). On June 16, 2010, he gave a statement to plaintiff's attorney and offered an opinion that plaintiff's fibromyalgia rendered her unable to work. (A.R. 425). Dr. Ruth's opinion on disability and other issues reserved to the Commissioner was not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). His opinion regarding the number of days that plaintiff might miss if she had been working was conjecture, not a medical opinion. *See Davis-Gordy v. Commissioner*, No. 1:11-cv-243, 2013 WL 5442418, at * 7 n.7 (W.D. Mich. Sept. 30, 2013) (collecting cases). The ALJ found that the RFC restrictions suggested by Dr. Ruth were not supported by his own treatment records:

> As for the opinion evidence, the undersigned is aware that Dr. Ruth completed a report in August 2008 indicating that the claimant had to stop working secondary to severe arthritis associated with lupus (Exhibit 13F, page 28). The doctor subsequently completed a report in May 2009 indicating that the claimant was able to lift/carry less than 10 pounds occasionally, and stand and/or walk less than 2 hours in an 8-hour workday. The doctor also indicated that the claimant was precluded from operating foot/leg controls with either lower extremity (Exhibit 11F, page 3). In interrogatories completed in June 2010, Dr. Ruth also indicated that the claimant was unable to work on a regular and consistent basis due to severe fibromyalgia syndrome. The doctor further indicated that for every day of work, the claimant would probably need 4 or 5 days off secondary to "severe" pain (Exhibit 21F, pages 1 and 2).
>
> The undersigned, however, has afforded little weight to the opinions rendered by Dr. Ruth as they are simply inconsistent with his treatment records. Specifically, records submitted

> by the doctor reflect that when examined in August 2008, the claimant had thrush. No musculoskeletal or neurological abnormalities were reported (Exhibit 13F, page 26). Dr. Ruth subsequently noted in October 2008 that the claimant had no edema of the extremities. Her motor strength was 5/5 throughout and deep tendon reflexes were normal (Exhibit 13F, page 25). Likewise, in the report completed in May 2009, the [sic] Dr. Ruth noted that his examination of the claimant had revealed no musculoskeletal, neurological, abdominal, cardiovascular, or respiratory abnormalities (Exhibit 11F, page 3). The doctor subsequently reported that when examined in January 2010, the claimant had "multiple sites of myalgias" but continued to be intact in respect to motor strength, sensation and reflexes. The doctor also noted that the claimant had no movement disorder (Exhibit 19F, page 7). Dr. Ruth also noted in April 2010 that the claimant had no respiratory, cardiovascular or abdominal abnormalities. Her deep tendon reflexes were normal, and monofilament sensory examinations of both feet were also normal. The doctor reported no tender points, loss of motion, or loss of motor strength (Exhibit 19F, page 4). Given the above, Dr. Ruth's assessments are not considered to be a true reflection of his treatment notes or the claimant's ability to function.

(A.R. 18). I find no violation of the treating physician rule. The ALJ complied with the procedural requirement of providing good reasons for the weight he gave to Dr. Ruth's opinions.

### B.     Dr. Einerson

Plaintiff argues that the ALJ failed to give proper weight to the opinions of consultative examiner Einerson. On February 16, 2010, Dr. Einerson performed a consultative examination. (A.R. 386). Plaintiff related that she continued to smoke one pack of cigarettes per day and had been a smoker for 40 years. Her gait was normal and she did not use an assistive device. She was 63 inches tall and weighed 216 pounds. She retained a full range of motion in her extremities and her hands had full dexterity. Plaintiff was able to get on and off the examination table without difficulty. Her motor and sensory function remained intact. (A.R. 387). Dr. Einerson completed portions of a RFC questionnaire (A.R. 389-94) but left blank every question asking for the supporting medical or clinical findings. (A.R. 389-94). Dr. Einerson's specialty was emergency medicine (A.R.394), not rheumatology. Plaintiff "exhibit[ed] joint tenderness and ha[d] a rash on

exam. Otherwise vital signs and physical examination [were] unremarkable, and the patient [was] neurovascularly intact." (A.R. 388).

The treating physician rule did not apply to any of Dr. Einerson's opinions, because she was a consultative examiner. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Commissioner*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). Because Dr. Einerson was not a treating physician, the ALJ was not "under any special obligation to defer to [her] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Commissioner*, No. 13-5841, __ F. App'x __, 2014 WL 223655, at * 6 (6th Cir. Jan. 21, 2014). Nonetheless, the ALJ carefully considered Dr. Einerson's opinions and found that they were not persuasive:

> Consultative examiner, Stacy Einerson, M.D., subsequently reported that when examined in February 2010, the claimant had multiple papules, plaques and macules on her upper and lower extremities, and evidenced mild tenderness with range of motion of joints. The claimant's range of motion, however, was full throughout all joints. The claimant also had full dexterity of the hands. Her reflexes were symmetrical, and there were no deficits of sensation or motor strength. Dr. Einerson also noted that the claimant ambulated with a normal gait and did not require an assistive device (Exhibit 15F, page 3). It is noted that during an April 2010 examination, the claimant's treating physician also reported no loss of motion, or neurological deficits (Exhibit 19F, page 4).

\* \* \*

> The undersigned is also aware that following the consultative examination performed in February 2010, Stacy Einerson, M.D. completed a Medical Source Statement indicating that the claimant could sit for only 1 hour at a time without interruption, stand for only 10 minutes at a time, and walk for only 5 minutes at a time. The doctor further opined that the claimant could stand and walk for a total of only 30 minutes each during an 8-hour workday, and was unable to walk a block at a reasonable pace on rough or uneven surfaces (Exhibit 15F, pages 5 and 6). In the body of her report, however, Dr. Einerson noted that during her examination, the claimant evidenced a normal gait and did not require the use of an assistive device. There was only mild tenderness with ranging of joints, and the claimant continued

to have full range of motion throughout all joints. The claimant was also intact in respect to motor strength, reflexes and sensation (Exhibit 15F, page 3). The undersigned has afforded little weight to Dr. Einerson's assessment as it is inconsistent with objective findings noted in the body of her report.

(A.R. 16, 18). The ALJ is responsible for weighing conflicting medical opinions. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). I find no error in the weight the ALJ determined was appropriate for Dr. Einerson's opinions.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: April 2, 2014          /s/ Joseph G. Scoville
                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).